478 P.2d 128

**SULPHER SPRINGS VALLEY ELECTRIC COOPERATIVE, INC., an Arizona corporation, Appellant,**

**v.**

**Alicia BELTRAN, widow of Heraclio A. Beltran, Deceased, in her sole and separate right, and Alicia Beltran, Guardian ad litem of Joe Beltran, Juan Enrique Beltran and Fernando Beltran, minor children of Heraclio A. Beltran, Deceased, Appellees.**

**No. 2 CA–CIV 881.**

Court of Appeals of Arizona, Division 2.

Dec. 17, 1970.

Rehearing Denied Jan. 15, 1971.

Review Denied March 2, 1971.

Murphy, Vinson & Hazlett, by John U. Vinson, Tucson, for appellant.

Molloy, Jones, Hannah, Trachta & Coolidge, by John F. Molloy, Benjamin W. Lazarow, Tucson, for appellees.

HOWARD, Chief Judge.

This is an action for the wrongful death of Heraclio Beltran brought by his widow, Alicia Beltran, in her sole and separate right and as guardian ad litem of their minor children. This action was consolidated with one brought by the father of Bacilio S. Verdugo, who was killed in the same accident. The consolidated cases were tried before a jury which returned a verdict against the Beltrans, but found in favor of the Verdugos in the sum of $50,000.00. The appellant was the defendant below and the appellees were the plaintiffs below. We shall hereinafter refer to the parties as they appeared in the trial court.

This is an appeal from the trial court's order granting a new trial to the plaintiffs. An appeal is also pending from the trial court's refusal to grant defendant's motion for a new trial in the Verdugo case.

The deaths of Beltran and Verdugo occurred while they were attempting to in-

stall a 29 foot long television antenna to the side of a home in Patagonia, Arizona. The distribution system in question consists of two bare wires, one "hot" and one "neutral," located approximately 28 feet from the ground. The "hot" line was constructed in such close proximity to the house that it passed over the top of the porch in front of the home, overlapping by about six inches. The neutral line was six feet further away on the same cross-arm. The antenna which electrocuted the plaintiff was placed against the side of the house by both Beltran and Verdugo. Beltran then asked Verdugo to go for a hammer and nails to secure it. The antenna began to sway and Beltran shouted to Verdugo who began to run back to assist his friend. There was a loud crack as the antenna came in contact with defendant's electric transmission line and Verdugo was knocked six to eight feet as he attempted to rescue his friend. Verdugo got up and made a second unsuccessful attempt to assist Beltran which caused the death of Verdugo.

Plaintiffs contended at trial that if the hot and neutral lines had been reversed on the cross-arm there would have been no adverse effect if the antenna had come into the vicinity of or touched the neutral line. It was the further contention of the plaintiff that there would have been little or no additional expense to construct the hot line away from the residences along this street and that it was negligence for the defendant to place the hot line next to these residences.

The trial court granted plaintiffs' motion for a new trial on the grounds: (1) That the verdict against the plaintiff Beltran was against the weight of the evidence because there was no evidence that Beltran knew or should have known of the risk of the high voltage wires; (2) over-emphasis of a contributory negligence instruction; (3) failure on the part of the defendant to give a complete and fair answer to an interrogatory; (4) in instructing the jury that the defendant was not bound to anticipate negligence on the part of others.

The court gave the following instruction to the jury:

" 'A power company engaged in distributing electric power over its wires to consumers is not an insurer of the safety of its consumer or anyone else, although the company must exercise a high degree of care to protect those likely to come in contact with its wires. The care required is that commensurate with the dangerous character of the business and consistent with its practical operation * * *'

*A company 'is not bound, however, to anticipate negligence on the part of others, but, until appraised [sic] that such reliance is no longer reasonably safe, may assume that others will exercise reasonable care in the management of their property.* So, it is not bound to anticipate every possible accident that might occur, or to guard against that which a reasonably prudent person would not, under the circumstances, anticipate, or which cannot reasonably be expected as likely to occur.' " (Emphasis added)

The giving of this instruction was one reason why the court concluded that it should grant a new trial. We agree. The italicized portion of the instruction is an erroneous statement of the law. Restatement (Second) Torts, § 302A states:

"An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person."

Although a plaintiff should not recover if he is guilty of negligence or assumes the risk, this does not relieve the original actor of his negligence. See Restatement (Second) Torts, § 302A comment b.

Comment c of the above cited section of the Restatement states in part:

"* * * Where the possibility of such negligence involves an unreasonable risk of harm, either to the person who is to be negligent or to another, the actor.

as a reasonable man, is required to take it into account and to govern his conduct accordingly."

The defendant is required to know that there is a certain amount of negligence in the world, and that some human beings will fail on occasion to behave as a reasonable man would behave.

Illustration 1 under Restatement (Second) Torts, § 302A is apropos. It states:

"1. A leaves a hole in the street, which would be quite obvious to an attentive automobile driver, but might easily not be discovered by an inattentive driver. B, a driver who is not keeping a proper lookout, drives into the hole and is injured. A may be found to be negligent toward B."

██ Negligence on the part of the plaintiff does not relieve the defendant in Arizona from liability for his own negligence. Under the doctrine enunciated in Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444 (1962), and the later case of Heimke v. Munoz, 106 Ariz. 26, 470 P.2d 107 (1970), it is clear that the jury still has a right to return a verdict in favor of a plaintiff although the facts conclusively show that the plaintiff is guilty of contributory negligence.

There is another cogent reason why the court was correct in granting the new trial to the plaintiffs. The court gave the following instruction to the jury:

"'You are *also* instructed that if you find that the plaintiffs' decedents were guilty of negligence, and that such negligence was the proximate cause of the accident, *then the law leaves the parties where it finds them* and the plaintiffs should not recover from the defendant, even though you find that the defendant was guilty of negligence. In such circumstances it is immaterial whether the conduct of the defendant, was more negligent than that of the plaintiffs' decedents.'" (Emphasis added)

In the case of Heimke v. Munoz, supra, the court stated:

"We note a tendency, see Kelch v. Courson, 103 Ariz. 576, 447 P.2d 550, and Evans v. Pickett, 102 Ariz. 393, 430 P.2d 413, to instruct the jury that if it finds contributory negligence 'the law would leave them (the parties) where it finds them.' Such an instruction is expressly disapproved. The Constitution is part of the law of the State. It does not leave the parties where it finds them." 470 P.2d at 111.

██ Although the above instruction was not objected to at trial nor cited by the court as a reason for a new trial, plaintiffs cite the giving of said instruction in order to justify the action of the trial court in granting a new trial. In Trojanovich v. Marshall, 95 Ariz. 145, 388 P.2d 149 (1963), the court noted that instructions in contravention of the constitution constitute fundamental error and can be raised for the first time on appeal. The giving of this instruction was ample reason to justify the granting of a new trial.

Since we find the court was correct in granting a new trial, it is not necessary for us to decide whether or not a new trial was justified on the other grounds stated by the court.

Affirmed.

KRUCKER and HATHAWAY, JJ., concur.